## C. P. Miller, Survivor, etc., Plff. in Err., *v.* Commonwealth of Pennsylvania.

By force of the act of June, 1834, an administrator *de bonis non* is entitled to all the assets of the decedent's estate that remained in the hands of the first administrator, and, if they are not voluntarily surrendered or assigned, he may recover them in an action at law against the latter's personal representatives.

In defense of an action brought in the court of common pleas to enforce the payment of a claim allowed by the orphans' court against a decedent's estate, the personal representative cannot set up a counterclaim which existed against the creditor at the time such claim was allowed.

The taking of the assets of an estate in satisfaction of or security for a debt of the administrator charges the creditor with a participation in the misapplication.

An agreement by an administrator that the amount of a decree in favor of the estate which he represents shall be credited upon his personal indebtedness to the decedent's debtor, and that he will assume the payment of the decree, does not bind the estate.

The orphans' court is the only tribunal before which the accounts of administrators can be settled.

(Decided April 5, 1886.)

Error to the Common Pleas of Wyoming County to review a judgment for plaintiff in an action for debt. Affirmed.

R. W. Russell, who was the administrator of the estate of Jacob DeWitt, sold lands of the deceased, by order of the

---

NOTE.—The orphans' court has power to enforce its own decrees, but an action at law may be instituted to recover a balance which has been found to be due. Weld v. M'Clure, 9 Watts, 495; Bowman v. Herr, 1 Penr. & W. 282. The act of March 29, 1832 (P. L. 190), made provision for the filing of a transcript of the amount due in another court. McCracken v. Graham, 14 Pa. 209. In such case the decree of the orphans' court is conclusive. Burd v. M'Gregor, 2 Grant Cas. 353.

court, to his brother, C. S. Russell, for the sum of $4,950. C. S. Russell gave his individual note to the administrator for the amount of this sale.

The following indorsements appear upon the back of the note:

Received, January 22, 1875, $5,023.63, preferred claim as allowed by Towanda Court to C. S. Russell, to apply on within.

M. W. DeWitt,<br>Administrator.

Received, October 4, 1875, $194.74, preferred claim as allowed by H. Streeter, auditor in estates of J. DeWitt, deceased, to C. S. Russell, to apply on within.

M. W. DeWitt,<br>Administrator.

Received, September 29, 1875, $206.01, as allowed by Auditor Streeter to C. S. Russell, administrator, and preferred claim, to apply on within.  M. W. DeWitt, Administrator.

After this sale Ralph Russell died, and C. S. Russell was appointed his administrator July 7, 1873. July 29, 1873, M. W. DeWitt was appointed administrator *de bonis non* of Jacob DeWitt's estate, and C. P. Miller and D. D. DeWitt were his bondsmen. The note above mentioned, with other assets of the estate of Jacob DeWitt, were received by M. W. DeWitt from C. S. Russell, administrator of the estate of R. W. Russell.

M. W. DeWitt, administrator, to accommodate C. S. Russell, consented that $5,023.62 of the note due from him to Jacob DeWitt's estate should be treated as cash by the auditor. C. S. Russell, as administrator for R. W. Russell, presented a claim for $206.01 for R. W. Russell's services as administrator of Jacob DeWitt's estate. Russell also presented a claim in his own right of $5,023.62. The auditor decreed that these claims should be paid in full.

The $5,023.62 decreed to C. S. Russell was due him by reason of liens on the real estate for the purchase money of which the note before mentioned had been given. By arrangement between M. W. DeWitt, administrator, and C. S. Russell, January 7, 1875, this amount was receipted by M. W. DeWitt, administrator, on said note. C. S. Russell, administrator of R.

W. Russell, in part paid the balance by directing M. W. DeWitt, administrator, to indorse the amount decreed to C. S. Russell, administrator of R. W. Russell, namely, $206.01 on the before-mentioned note, agreeing that he (C. S. Russell) would account to R. W. Russell's estate for the same. The amount was paid and indorsed September 29, 1874, and M. W. DeWitt, administrator, accounted to the estate of Jacob DeWitt for the amount so indorsed.

C. S. Russell was solvent at this time.

After this indorsement no claim was made on the part of the estate of R. W. Russell for the money decreed him until August 27, 1884, nearly nine years from the time the report was confirmed finally, M. W. DeWitt having in the meantime died.

This suit was brought by C. S. Russell, administrator of the estate of R. W. Russell, to recover the amount decreed by the auditor with interest.

In the court below the defendant in error rested, after putting in evidence the auditor's report and its confirmation.

The court excluded the offer of counsel for plaintiff in error to show the above facts, and directed the jury to find a verdict in favor of the plaintiff below for the amount decreed him by the auditor, $206.01 with interest from the date of confirmation to the date of trial.

A rule having been granted to show cause why a new trial should not be granted, the court below delivered the following opinion, per ELWELL, P. J. :

When Ralph W. Russell, administrator of Jacob DeWitt, died and M. W. DeWitt was appointed administrator *de bonis non* of the estate of Jacob DeWitt, all the assets of the estate in the hands of the first administrator, by force of the act of June, 1834, became at once the property of the administrator *de bonis non.*

They were recoverable by action at law against the administrator of the first administrator if not voluntarily surrendered or assigned, whether such assets consisted of personal property, choses in action, or the proceeds of judicial sales of real estate under an order of the orphans' court.

The offer of evidence by the defendant does not allege failure to deliver all the assets of the estate of Jacob DeWitt into the hands of the administrator *de bonis non.*

On the contrary, the facts in evidence clearly showed that this duty had been performed. Jacob DeWitt died in September, 1872. Ralph W. Russell administered upon his estate; he died before July 7, 1873, and M. W. DeWitt was appointed administrator *de bonis non* on the 29th day of July, 1873. In 1874 he settled an account showing assets in his hands to the amount of $7,662.85, thus showing that the assets had been delivered or passed over to him from the estate of Ralph W. Russell.

In the absence of any specific allegation to the contrary, a clear presumption arises that all the assets were so delivered, including the note of C. S. Russell mentioned in the offer.

In December, 1874, an auditor was appointed to distribute the fund admitted to be in the hands of M. W. DeWitt to and among persons entitled thereto.

It was in that proceeding judicially ascertained, and eventually confirmed by a decree or adjudication of the court having jurisdiction of the account, that there was due from the estate of Jacob DeWitt of the assets in the hands of the administrator *de bonis non* the sum of $206.01. From that adjudication no appeal was taken.

It is now proposed in this action brought to recover the sum found to be due to the estate of Ralph W. Russell, to prove that the indebtedness is on the part of the estate of Russell to that of Jacob DeWitt.

As offered, the attempt is to settle in this suit in the common pleas matters which can be settled only in the orphans' court, and which, so far as appears, have been already passed upon and adjudicated by that court.

The decree of the orphans' court of Bradford county is conclusive of the matters therein determined.

It is now claimed as a defense against that decree that it has been paid to the estate of Ralph W. Russell, by giving credit to C. S. Russell, his administrator, for the amount of the decree on a note given by him for his own private debt and passed over to the administrator *de bonis non* with the other assets of the estate.

The offer to this effect was properly overruled at the trial. The assets of an estate known to be such ought not to be applied for the discharge of the administrator's own debts, unless the creditor taking them can first be satisfied of his right to so

apply them. Field v. Schieffelin, 7 Johns. Ch. 150, 11 Am. Dec. 441, per Chancellor KENT.

The taking of the assets of an estate in satisfaction of, or security for, a debt of an administrator charges the creditor with a participation in the misapplication. It is a distribution of the trust fund, inconsistent with the object of the trust, which the person dealing with the administrator is bound to notice, where he has knowledge of the nature of the transaction. Such a transfer renders the assets liable in the hands of the assignee. This view of the law is sustained by a long line of decisions cited in note 1, Sutherland v. Brush, 11 Am. Dec. 388.

In Petric v. Clark, 11 Serg. & R. 386, 14 Am. Dec. 636, it was said by GIBSON, J., when the assignee knows at the time he is receiving his debt out of a fund not the property of the person paying, but which is appropriated to the payment of other debts, that alone is a circumstance of suspicion that ought to put him on inquiry as to the propriety of the transaction.

The assets are in the hands of an administrator, not for the payment of his own debts. They cannot be levied upon for his debts, even by his own permission. This seems to be the doctrine of the law as held by the courts generally. It is contended by the counsel for defendant that the case of Trotter v. Shippen, 2 Pa. St. 358, has established as a rule in this state that, if an administrator is solvent, the rule is different here. I am not prepared to believe that the decision in that case was intended to go that length. The facts were somewhat peculiar, and the decision was made with reference to them.

As I understand the case Nixon had the right to receive the interest on a mortgage which he had owned or which stood in his name and was by him marked to the use of an estate of which he was administrator. The owner of the property rented it to tenants who were to pay the interest; it was coal land. Nixon received coal of them without any agreement at first that it should apply on the interest; subsequently he received coal which was agreed to be in payment of interest, and he also agreed to indorse the coal he had before received of the tenants of the owner on the bond to secure which the mortgage was given. The question, says GIBSON, J., p. 360, was whether payment of the interest in coal for the private use of the executor would have been good if made by the owners, instead of through the instrumentality of their lessees. No fraud having been intended the payment was held good.

The agreement mentioned in the offer, that the indorsements should be made that were made on the note, if intended as payment of the money due from M. W. DeWitt to the estate of Ralph Russell, was not binding upon the latter estate, whether C. S. Russell was solvent or not. The offer to prove that the estate of Ralph W. Russell was liable to the estate of Jacob DeWitt, to the extent of the balance of the note of C. S. Russell was clearly inadmissible.

Whether that estate was solvent or insolvent did not appear in the evidence or offer. It was not shown, nor does it appear, that the account of Ralph W. Russell, administrator of Jacob DeWitt, had been settled in the orphans' court, nor that an account has been settled by C. S. Russell, as administrator of Ralph W. Russell. The orphans' court was the proper tribunal before which the accounts have been or should be settled.

So far as shown by the records in evidence the estate of DeWitt was indebted to that of Russell. I am of opinion that the unsettled matters between the estates cannot be settled in a suit in the common pleas. On the whole I am of opinion that no error was committed in the rejection of the evidence offered by the defendant, nor in the charge to the jury.

And now February 6, 1886, rule discharged.

The defendant thereupon brought error.

*James W. Piatt* and *Davies & Hall* for plaintiff in error.

*R. M. Peck* and *D. A. Overton* for defendant in error.

PER CURIAM:

The jurisdiction of the orphans' court over this claim in contention and the impropriety of attempting to assert it in the common pleas are correctly stated in the opinion of the learned judge on discharging the rule to show cause why a new trial should not be granted.

On that opinion the judgment is affirmed.